IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>v. )<br><br>NATHANIEL CAREY LEE, )<br><br>Defendant. ) | Case No. 1:25-cr-330 (RDA) |

## MEMORANDUM OPINION AND VERDICT

This matter came before the Court for bench trial on the Government's charges against Defendant Nathaniel Carey Lee of: (i) Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2), (b)(1) (Count One); (ii) Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2), (b)(1) (Count Two); and (iii) Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2) (Count Three). A bench trial was held before the Court on July 13, 2026, and July 14, 2026. Dkts. 152, 154. Having carefully considered the evidence presented at trial and the arguments presented by counsel as well as the post-trial briefing (Dkts. 156, 157), the Court finds Defendant GUILTY beyond a reasonable doubt on each of Counts One, Two, and Three charged in the Indictment.

## I. BACKGROUND

On December 9, 2025, Defendant was charged by Indictment with two counts of Receipt of Child Pornography pursuant to 18 U.S.C. § 2252(a)(2), (b)(1) and one count of Possession of Child Pornography pursuant to 18 U.S.C. § 18 U.S.C. § 2252(a)(4)(B), (b)(2). Dkt. 1. In Count One, the grand jury charged that:

> Between on or about September 15, 2017 to on or about June 13, 2024, in the Eastern District of Virginia, the defendant, NATHANIEL CAREY LEE, did knowingly receive and attempt to receive at least one visual depiction using a means and facility of interstate and foreign commerce, and which visual depiction had been mailed, and had been shipped and transported in and affecting interstate and foreign commerce, and which contained

materials which had been mailed and so shipped and transported, by any means including by computer; and the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction was of such conduct.

*Id.* at 1. In Count Two, the grand jury charged that:

Between on or about June 10, 2020 to on or about June 13, 2024, in the Eastern District of Virginia, the defendant, NATHANIEL CAREY LEE, did knowingly receive and attempt to receive at least one visual depiction using a means and facility of interstate and foreign commerce, and which visual depiction had been mailed, and had been shipped and transported in and affecting interstate and foreign commerce, and which contained materials which had been mailed and so shipped and transported, by any means including by computer; and the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction was of such conduct.

*Id.* at 2. In Count Three, the grand jury charged that:

On or about June 13, 2024, in the Eastern District of Virginia, the defendant, NATHANIEL CAREY LEE, did knowingly possess and attempt to possess at least one matter which contained any visual depiction that had been mailed, and had been shipped and transported using any means and facility of interstate and foreign commerce, and in and affecting interstate and foreign commerce, and which visual depiction was produced using materials which had been mailed and so shipped and transported by any means including by computer, and the production of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction was of such conduct, to wit: videos and images depicting minors engaging in sexually explicit conduct, at least one of which is different from the images in Counts One and Two above and involved a prepubescent minor and a minor who had not attained 12 years of age engaging in sexually explicit conduct.

*Id.* Defendant was arraigned on the Indictment on December 18, 2026. Dkt. 16. At the arraignment, Defendant signed a speedy trial waiver, and a jury trial was originally set for April 6, 2026. *Id.*

After Defendant filed a Notice of Intent to Proceed with Defense Pursuant to Federal Rule of Criminal Procedure 12.2, the Court set and held a status conference on March 4, 2026. Dkt. 47. At the status conference, Defendant again signed a waiver of speedy trial, and Defendant's jury trial was continued until July 13, 2026. Dkt. 48.

2

By May 15, 2026, the parties filed all relevant pre-trial motions and motions *in limine*, responses, and replies. On June 3, 2026, this Court held a hearing on the motions. Dkt. 99. On June 29, 2026, and on July 7, 2026, the Court issued orders resolving those motions. Dkts. 130, 144.

On July 8, 2026, the Court held a final pre-trial conference. Dkt. 148. During the hearing, Defendant waived his right to trial by jury, signed a waiver stating that he was knowingly, freely, and voluntarily waiving that right, and the Court conducted a colloquy regarding the same. Dkts. 149, 150. Thus, the jury trial set for July 13, 2026, was converted to a bench trial.

On July 13 and 14, 2026, a bench trial was held before this Court, during which time the Court heard testimony, admitted evidence, and heard argument. During trial, Defendant moved for acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, and the Court denied the Motion and, when Defendant renewed that Motion at the end of trial, the Court took the Motion under advisement.

## II. LEGAL STANDARD

"In a case tried without a jury, the court must find the defendant guilty or not guilty. If a party requests before the finding of guilty or not guilty, the court must state its specific findings of fact in open court or in a written decision or opinion." Fed. R. Crim. P. 23(c). "When . . . a jury trial is waived, the judge weighs the evidence, determines the credibility of the witnesses, and finds the facts." *United States v. Bales*, 813 F.2d 1289, 1293 (4th Cir. 1987); *see* 2 C. Wright, *Federal Practice and Procedure* § 374 (4th ed. 2020); *United States v. Kipp*, 2017 WL 2662983, at *2 (W.D.N.C. June 20, 2017) ("In a bench trial, the court's duty is to . . . choose from among conflicting inferences and conclusions those which the court considers most reasonable."). "The

3

Court has wide discretion to select among conflicting inferences to be drawn from the testimony." *United States v. Higgins*, 2021 WL 342565, at *1 (W.D. Va. Jan. 31, 2021).

Here, notwithstanding the fact that the parties did not formally request an opinion, the Court provides its findings of fact and conclusions of law so that the parties may be aware of the basis for the Court's verdict.

### III. FINDINGS OF FACT

During its case in chief, the Government presented the testimony of three witnesses. Based on the testimony and exhibits admitted through these witnesses, the Court makes the following findings:

A law enforcement investigation was initiated after IP addresses ending in 214 and 105 were flagged for accessing child sexual abuse material ("CSAM"). The IP addresses belonged to a Verizon account (Dkt. 151 at 1) that was registered to Defendant's father at Defendant's home address, on Forsythia Street Springfield, Virginia,[1] where Defendant resided with his parents (*Id.* at 4).

On June 13, 2024, law enforcement executed a search warrant at Defendant's home. In Defendant's bedroom, officers located a variety of devices, including an HP Pavilion desktop (the "desktop"), an 8-terabyte Seagate hard drive (the "hard drive"), and an MSI laptop (the "laptop"). *Id.* at 2-3, 5. One of the devices was actively running the Freenet platform (a peer-to-peer online file sharing network) when officers entered the bedroom to conduct their search. In addition to Freenet, the laptop also contained Frost – the message board component of Freenet. Along with these devices, officers seized various CDs and DVDs that they found in Defendant's bedroom for

---

[1] The specific address is known to the Court. The Court omits the specific address from this public opinion and verdict.

forensic testing. Forensic testing revealed that a few of the images that initiated law enforcement's investigation of the matter were found on Defendant's various devices, along with a voluminous collection of CSAM files. Among those files, Defendant had copies of catalogues he created of CSAM, novels he authored which depict CSAM, and statutes related to CSAM from Cornell Law School Legal Information Institute's website. The file names on Defendant's devices varied in nature, but many were provocative and described the conduct depicted in the files. Officers photographed the condition of Defendant's room when they executed the search warrant and captured in one of the photos was the COPINE scale, a rating system used to categorize the severity of images of child sex abuse, which was taped to Defendant's wall. Gov. Exh. 2.

At the same time the search warrant was conducted, both Defendant and his father participated in interviews with law enforcement officers in a mobile command vehicle which was parked on the street in front of their residence. Gov. Exh. 43. Defendant and his father were interviewed separately. *Id.* Officers first spoke with Defendant's father, who informed them of Defendant's autism, then the officers spoke with Defendant. *Id.*

Prior to questioning Defendant, officers provided a copy of the search warrant, advised him of his rights, and provided him with a written *Miranda* waiver, which Defendant reviewed and signed. *Id.* At the time the interview was conducted, Defendant was 36 years old. Defendant was not restrained during the interview, was not informed that he was required to speak with the officers, and was free to leave. The Court observed Defendant's presentation during the interview and he was engaged, listened to the questions asked, appeared to follow them, and answered them.[2]

---

[2] Although the Court had some concerns regarding Defendant's presentation and affect prior to the trial, Defendant's presentation during the interview and during the trial were markedly different. During the interview, Defendant was engaged and responsive. Moreover, during trial, the Court observed Defendant consult with his attorneys, pass them notes during certain witness examinations, and overall appear to be observant and engaged throughout the course of the trial.

During the interview, Defendant disclosed that he worked as a financial auditor. *Id.* The officers asked Defendant specific questions related to the investigation, and Defendant offered that he had exclusive access to his devices, that no one else in the household used his devices, that their service provider was Verizon, and that their Wi-Fi was password protected. *Id.* When asked about his use of Freenet, Defendant informed the officers that he had been using the program for 20 years. *Id.* Officers then asked Defendant if they would find CSAM on his devices, and Defendant responded that he had 4 million files of minors of a variety of ages. *Id.* Defendant further informed officers that he tended to download pages from Freenet and within those pages were CSAM and it was his practice to keep all files and not delete anything whether for work or personal use. *Id.* Defendant expressed a preference for images of teenage minors and indicated that he used such images to masturbate.

The Court's specific findings about some specific facts are as follows:

**Desktop:** Defendant exclusively used and controlled this desktop computer. The windows user for the desktop computer was "Nathaniel Lee." Defendant had installed the Freenet software program, and there were files with names indicative of child pornography. The desktop computer itself has a trade inscription stating it was "Made in China."

**Hard drive:** Defendant exclusively used and controlled this hard drive. This hard drive has a trade inscription stating it was "Assembled in Thailand " and a "Product of China," and contained files and file paths similar or identical to those on Defendant's other devices. Specifically, Government Exhibits 50 and 60 are depictions of child pornography found on the hard drive.

**Laptop:** Defendant exclusively used and controlled this laptop. Defendant had also installed the Freenet software program on this device, and there were files with names indicative

of child pornography. Specifically, Government Exhibits 27 and 27A are depictions of child pornography found on the laptop. Additionally, Government Exhibit 29 is a depiction of child pornography found on the laptop. This laptop has a trade inscription stating it is a product of "China."

The material found on Defendant's devices described above included innumerous pictures and videos of very young pre-pubescent children under the age of 12—some of whom appeared to the Court to be under the age of 5—engaging in sexually explicit conduct, including sexual intercourse, bestiality, and lascivious exhibition of genitalia, which were admitted as exhibits at trial. These Visual Depictions were all created and accessed on Defendant's devices between September 15, 2017, and June 13, 2024. Several of the Counts 1 and 2 Visual Depictions have file names that clearly indicate that they contain depictions of children engaging in sexually explicit conduct. The Court specifically finds that two of the Counts 1 and 2 Visual Depictions of "Amber" "Jenny" and an unnamed child featured in a video referencing Cambodia, depict young, prepubescent children under the age of 12 engaging in lascivious exhibition of genitalia and/or sexual conduct. The Court also finds that the child "Baby J" in the Count 3 Visual Depiction is a real person. The Court finds that there is nothing in or about the Count 3 Visual Depictions to suggest that the child depicted in it was generated or altered by artificial intelligence or are otherwise not exactly what they appear to be—a real child engaging in sexually explicit conduct, especially considering the testimony offered by retired law enforcement officer who personally met and interviewed the child depicted in the images and videos. The Court further finds that none of the Count 1 Visual Depictions formed the basis for Count 2 of the Indictment.

7

## IV. CONCLUSIONS OF LAW

The Indictment charges Defendant with conduct violating three statutes (1) Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2), (b)(1); (2) Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2), (b)(1); and (3) Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2). For the reasons stated below, the Court finds Defendant guilty of all three counts.

### A. Voluntariness of Defendant's Statements to Law Enforcement

At trial, Defendant challenged the voluntariness of the statements he made during his interview with law enforcement officers during the search conducted at his home on June 13, 2024. The Fifth Amendment prohibits law enforcement from compelling a person in custody to testify against themselves. *United States v. Bendann*, 2026 WL 1829286, at *5 (4th Cir. 2026) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). Thus, before any custodial interrogation, officers must inform the person of their rights to remain silent and to an attorney; otherwise, evidence obtained from a custodial interrogation is generally inadmissible. *See United States v. Kuhn*, 809 F. Supp. 3d 326, 343 (E.D.N.C. 2025); *see also Miranda*, 384 U.S. at 444. To determine whether an individual is "in custody" the court must decide whether, under the totality of the circumstances, the "suspect's freedom of action [was] curtailed to a degree associated with formal arrest." *Kuhn*, 809 F. Supp. 3d at 344 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)) (quotation marks omitted). To conduct this inquiry, a court must ask whether a reasonable person would have felt that he was at liberty to leave. *Id.* If a reasonable person would not have felt at liberty to leave, then a court also must ask "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id.* (quoting *United States v. Leggette*, 57 F.4th 406, 410 (4th Cir. 2023) (quotations and citations

8

omitted)). To determine whether the suspect is in custody, a court should consider whether law enforcement advised the suspect that he was not under arrest as well as "the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, the potential display of a weapon by an officer, and whether there was any physical contact between the officer and the defendant." *United States v. Weaver*, 282 F.3d 302, 312 (4th Cir. 2002).

In this case, Defendant was not in custody. Although Defendant was interrogated by law enforcement, at the outset of their conversation, Defendant was informed that he was not under arrest and was free to leave. Gov. Exh. 43; *see also United States v. Hargrove*, 625 F. 3d 170, 177-82 (4th Cir. 2010) (holding that the defendant was not in custody because agents told defendant that he was not under arrest and was free to leave). In *Hargrove*, the Fourth Circuit also evaluated the circumstances around the defendant's interrogation and found that, in addition to being informed that he was free to leave, defendant was not handcuffed during interrogation, agents did not draw their weapons, and the conversation was amicable and non-threatening in tone. 625 F.3d at 175-6. The same circumstances exist here. Defendant was not arrested during interrogation, no weapons were brandished, and the nature of the conversation between Defendant and the law enforcement officers remained neutral and nonthreatening. *See* Gov. Exh. 43. The Court further considers the fact that although Defendant was not in custody, and therefore did not require a *Miranda* warning, officers provided him with one anyway.

The next step in the Court's analysis requires an assessment of the voluntariness of the statements that were made. The Supreme Court of the United States has held that a waiver of *Miranda* rights is voluntary if "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Colorado v. Spring*, 479 U.S. 564, 573 (1987). A statement

is voluntary if it was "the product of an essentially free and unconstrained choice by its maker." *Brendann*, 2026 WL 1829286, at *5 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). But even statements that appear voluntary might not be if the defendant's "will has been overborne and his capacity for self-determination critically impaired." *Id.* A court must look to the totality of the circumstances to make that call. *Id.* at 226. The court may consider age, education, intelligence, lack of any advice of rights, length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as deprivation of food or sleep. *Kuhn*, 809 F. Supp. 3d at 352 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26 (1973)). Similarly, courts must consider the characteristics of the accused and the details of the interrogation. *See Dickerson v. United States*, 530 U.S. 428, 434 (2000).

In instances where defendants have autism, courts consider whether the defendants' mental capacities impacted the voluntariness of their statements.[3] Evaluating the totality of circumstances in this case, the Court finds that Defendant's statements were voluntary. The tone of the interview was friendly and conversational, and no facts indicate that Defendant's will was overborne or that his capacity for self-determination was critically impaired. Defendant was 36 years old at the time of his interview with law enforcement, and prior to the onset of this litigation, Defendant maintained employment as an auditor. Gov. Exh. 43. Similar to the circumstances illustrated in

---

[3] *See United States v. Chapman*, 175 F. 4th 1118, 1132-33 (9th Cir. 2026) (holding that although the court recognizes that mental capacity of an individual can undoubtedly impact the voluntariness of a *Miranda* waiver, the court did not find that defendant's autism impacted his understanding); *see also United States v. Anthony*, 2025 WL 3110789, *3 (3d Cir. Nov. 6, 2025) (affirming district court's finding that despite defendant's autism diagnosis, his *Miranda* waiver was voluntary, knowing, and intelligent because the detectives did not take advantage of his disability); *United States v. Dzionara*, 2024 WL 191803, *2 (2d Cir. Jan. 18, 2024) (finding no clear error in the district's determination that defendant's statements were voluntary despite his autism because the interview was relatively short and noncustodial, the agents used a conversational tone, did not make any threats or promises, and did not display handcuffs, badges, or weapons).

10

the relevant case law, Defendant's interactions with law enforcement were amicable for the duration of the interview, and he was advised of his rights. *Id.* Defendant was not deprived of sleep, water, food, or any other necessities, nor was he questioned long enough to consider any deprivation of such to be objectionable. Further, Defendant was interviewed in a neutral, non-intimidating setting within the vicinity of his home, in the officers' mobile command vehicle parked outside of his residence. Although Defendant has autism as stated in his proffer, Defendant demonstrated an understanding and awareness of the questions asked and the circumstances around the questioning that did not give his interviewers or the Court pause about the nature of his responses. Even where officers asked compound questions, Defendant's responses demonstrated his understanding of the questions presented. The Court had previously expressed concerns regarding Defendant's demeanor, but Defendant's appearance on the video of the interview showed him to be more engaged, responsive, and aware of matters than he had previously demonstrated to this Court.

Defendant further challenged the fact that law enforcement requested passwords to his devices, thereby gaining access to evidence. Although Defendant was prompted for his passwords by law enforcement, evaluating the circumstances of the request, this Court finds that Defendant's response supplying the agents with his password was voluntary. *See Bendann*, 2026 WL 1829286, at *5 (finding that defendant entering his password for officers was voluntary because defendant was uncuffed, clothed, and had been chatting politely with officers prior to entering his passcode for his phone). Finally, Defendant argues that the officers' effort to establish good rapport with his father demonstrates coercion. The Court disagrees, and finds that the officers' interactions with Defendant's father have no bearing on the voluntariness of Defendant's statements.

11

Thus, analyzing all relevant factors (including Defendant's autism diagnosis), the Court finds that Defendant's statements were voluntary.

### B. Venue

Under 18 U.S.C. § 3237(a), a crime involving interstate commerce can be "prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves." Defendant challenges venue only with respect to the two receipt counts. But the First Circuit has affirmed a finding of appropriate venue for a receipt charge where "the child pornography images Cameron sent and received while in New York were stored on Cameron's Dell Laptop, which he later brought back to Maine." *United States v. Cameron*, 699 F.3d 621, 636 (1st Cir. 2012). Thus, "because the objects of Cameron's commerce moved into the District of Maine, venue there was proper." *Id.* So too here. Moreover, as the First Circuit noted, venue here is "consistent with the purpose of the Constitution's venue protection, which is to 'ensure[] that a criminal defendant cannot be tried in a distant, remote, or unfriendly forum solely at the prosecutor's whim.'" *Id.* Here, Defendant lives in this District and so this District cannot be distant or remote to him. Other Courts of Appeals have also rejected challenges to venue such as those raised by Defendant. *See, e.g.*, *United States v. Flaming*, 133 F.4th 1011, 1022 (10th Cir. 2025) (affirming finding of venue where "no evidence suggests that Flaming or anyone else ever used the computer" elsewhere). Further, receipt of child pornography is construed as a continuing offense for the purposes of venue. *See United States v. Engle*, 676 F. 3d 405, 413 (4th Cir. 2012) (finding that "any offense involving transportation in interstate commerce is a 'continuing offense' and may be prosecuted 'in any district from, through, or into which such commerce ... moves.'") Importantly, Freenet was running when officers executed the search warrant in this District. Moreover, the IP address associated with that use of Freenet was associated with Defendant's

12

residence in this District.  In any event, venue need only be established by a preponderance of the evidence, which the Government has established here.  *Id.* at 413-18.

### C.  Count One: Section 2252(a)(2)

Count One of the Indictment charges Defendant with Receipt of Child Pornography violation of 18 U.S.C. § 2252(a)(2).  Thus, the Government had to prove the following elements beyond a reasonable doubt: (1) Defendant knowingly received or attempted to receive any visual depiction; (2) either (a) Defendant received or attempted to receive the visual depiction using any means or facility of interstate or foreign commerce, or (b) the visual depiction had been shipped or transported in or affecting interstate or foreign commerce, or (c) the visual depiction contained materials that had been shipped or transported in or affecting interstate or foreign commerce; (3) the producing of the visual depiction involved using a minor engaged in sexually explicit conduct; (4) the visual depiction is of a minor engaged in sexually explicit conduct; and (5) Defendant knew that the visual depiction involved the use of a minor engaging in sexually explicit conduct.  18 U.S.C. § 2252(a)(2); *United States v. Bennett*, 830 F. App'x 401, 402 (4th Cir. 2020) (citing *United States v. Cedelle*, 89 F.3d 181, 185 (4th Cir. 1996)).

The Court finds that the relevant visual depictions for this charge are files associated with "Amber" and "Jenny" from the Defendant's "Black cat" file collection (the "Count 1 Visual Depictions").  *See* Gov. Exhs. 17, 18.

With respect to the first element, the Court finds beyond a reasonable doubt that Defendant knowingly received or attempted to receive the Count 1 Visual Depictions on the desktop and hard drive.  "The mens rea required by the statute is that the defendant 'knowingly or intentionally' engage in the prohibited activities." *United States v. Matthews*, 209 F. 3d 338, 352 (4th Cir. 2000). "To act 'knowingly' is to act with 'knowledge of the facts that constitute the offense' but not

13

necessarily with knowledge that the facts amount to illegal conduct, unless the statute indicates otherwise." *Id.* "To satisfy the 'knowing' element under these provisions, the government must present sufficient evidence such that a rational [fact finder] could find that the defendant had knowledge of 'the sexually explicit nature of the materials as well as . . . the involvement of minors in the materials' production . . . ." *United States v. Miltier*, 882 F. 3d 81, 86 (4th Cir. 2018) (quoting *Mathews*, 209 F.3d at 351) (internal citations omitted).

Defendant had the requisite mens rea associated with this element. During his interview, Defendant informed officers that he downloaded pages from Freenet that contained CSAM to his devices (which includes the laptop, hard drive, and desktop). Although those downloads may have contained other materials, Defendant was aware of the CSAM also contained within those downloads. Further, Defendant's extensive filing and organization of the files associated with "Amber" and "Jenny" on his hard drive support this finding. The Government also presented overwhelming evidence that Defendant not only was aware of these downloads but was interested in such materials and sought them out, including evidence that Defendant specifically created and provided guides describing the length and audio of similar files saved in the same collection (Gov. Exh. 50) and an extensive annual catalog, including an "order form" bearing Defendant's name, address, email, and phone number for others to purchase some of the extensive material he had amassed (Gov. Exh. 14A).[4]

---

[4] Defendant attempts to argue that "[a]uto downloading is possible." Dkt. 156 at 3. There was no evidence suggesting that auto-downloading occurred here. But, even so, Courts of Appeals have recognized "[a] court need not find that the defendant downloaded the images to convict him or her of possessing *or receiving* child pornography . . . if he or she seeks it out and exercises dominion and control over it." *United States v. Zarn*, 365 F. App'x 838, 838 (9th Cir. 2010); *see also United States v. Blanc*, 2025 WL 945655, at *6 (11th Cir. Mar. 27, 2025) (per curiam) ("The child pornography videos were automatically downloaded to Mr. Blanc's phone by WhatsApp. Nevertheless, 'knowledge can be inferred from circumstantial evidence,' and the evidence here

14

The Court further finds beyond a reasonable doubt that Defendant received or attempted to receive the Count 1 Visual Depictions using any means or facility of interstate or foreign commerce. The term "means or facility of interstate commerce" includes the use of any electronic device or program connected to the internet and capable of sending information over the internet. *United States v. Ellyson*, 326 F.3d 522, 533 (4th Cir. 2003) ("[P]roof of transmission of pornography over the Internet . . . satisfies the interstate commerce element of the offense[.]" (citing *United States v. Hilton*, 257 F.3d 50, 54-55 (1st Cir. 2001))); *United States v. Kaye*, 451 F. Supp. 2d 775, 784 (E.D. Va. 2006) (holding that use of the internet necessarily involves a facility of interstate commerce), *aff'd*, 243 F. App'x 763 (4th Cir. 2007). Defendant used Freenet to obtain the images at issue here, an internet platform to which he connected from his various devices, including as relevant for Count 1, his desktop and hard drive. Thus, this Court finds beyond a reasonable doubt that the Government has satisfied this element.

Next, the Government must prove that the producing of the visual depiction involved using a minor engaged in sexually explicit conduct. The term "visual depiction" includes images, pictures, videos, undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format. 18 U.S.C. § 2256(5). The term "sexually explicit conduct" means actual or simulated: (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) the lascivious exhibition of the anus, genitals or pubic area of any person.

---

permitted the jury to find that Mr. Blanc acted with the requisite knowledge." (internal citation omitted)).

18 U.S.C. § 2256(2)(A) and (2)(B).   The relevant images for this Count include images of "Amber" and "Jenny," which were found on the hard drive connected to the desktop.  Gov. Exhs. 17 and 18.  Upon review, the Court finds that both images displayed real minors, specifically prepubescent girls who are depicted engaging in sexually explicit conduct.  Thus, the Court finds that the Government has proven this element beyond a reasonable doubt.

The fourth element requires a showing that the visual depiction is of a minor engaged in sexually explicit conduct.  Given the findings in the previous element, the Court also finds that the Government has satisfied the burden for this element as the depictions of "Amber" and "Jenny" are of each of them engaged in sexually explicit conduct.

For the final element, the Government must prove beyond a reasonable doubt that Defendant knew that the visual depiction involved the use of a minor engaging in sexually explicit conduct.  The Court finds that Defendant knew.  Defendant's own statements that he had 4 million CSAM files lend credit to the fact that he knew that the Count 1 Visual Depictions involved the use of a minor engaging in sexually explicit conduct.  Moreover, Defendant's meticulous organization and cataloguing of the files indicate his familiarity with their content.  The file names themselves shed light on their content, some even revealing the specific ages and acts performed in the images and videos.  Further, Defendant's computer file path indicates that he opened and viewed the videos associated with this count along with other content on his devices that contained CSAM.

For all of these reasons, the Court finds beyond a reasonable doubt that Defendant received the Count 1 Visual Depictions of  minors engaged in sexual activity.  In sum, the Court finds beyond a reasonable doubt that the Government has established each of the elements necessary to

demonstrate receipt of child pornography in violation of § 2252(a)(2).  Accordingly, this Court finds Defendant guilty of violating 18 U.S.C. § 2252(a)(2) as asserted in Count One.

### D.  Count Two: Section 2252(a)(2)

Count Two of the Indictment also charges Defendant with Receipt of Child Pornography in violation of 18 U.S.C. § 2252(a)(2).  The Government must again prove beyond a reasonable doubt the elements outlined *supra*.  In Count Two, the Government charged conduct related to the laptop.  The Court finds that the relevant visual depictions for this charge are the "France Daddy Daughter" and "2010 Cambodian" media.  *See* Gov. Exhs. 27, 29 (the "Count 2 Visual Depictions").

With respect to the first element, the Court finds beyond a reasonable doubt that Defendant knowingly received or attempted to receive the Count 2 Visual Depictions.  Again, Defendant's statement to law enforcement shows that he downloaded CSAM from Freenet to his laptop, and the evidence is overwhelming that he knew the contents of the downloads from Freenet were visual depictions.

The Court further finds beyond a reasonable doubt that Defendant received or attempted to receive the Count 2 Visual Depictions using any means or facility of interstate or foreign commerce.  In making this finding, the Court relies on Defendant's own statements that he used Freenet to download CSAM from the internet.  As established, Freenet, an internet program, qualifies as a means or facility of interstate commerce.

Next, the Government must prove that the producing of the visual depiction involved using a minor engaged in sexually explicit conduct.  The CSAM associated with this Count are images found in Defendant's laptop, including Government Exhibits 27, 27A, and 29.  Upon review of these exhibits and consideration of the testimony given concerning the files, the Court finds that

the production of the Count 2 Visual Depictions did involve an actual minor engaged in sexually explicit conduct.

The fourth element requires a showing that the visual depiction is of a minor engaged in sexually explicit conduct. Both the testimony of the forensic expert and the Court's review confirm that the Count 2 Visual Depictions are in fact of minors engaged in sexually explicit conduct. Thus, this element has also been satisfied beyond a reasonable doubt.

For the final element, the Government must prove beyond a reasonable doubt that Defendant knew that the visual depiction involved the use of a minor engaging in sexually explicit conduct. Considering the fact that the Count 2 Visual Depictions are saved among other video files with detailed, sexually explicit names, the Court finds that Defendant was aware of the nature of the Count 2 Visual Depictions. Further, other evidence submitted by the Government demonstrates that Defendant opened and played the media through the laptop's media player.

Thus, each of the elements of Section 2252(a)(2) are satisfied beyond a reasonable doubt as to the Count 2 Visual Depictions, and Defendant is therefore guilty of Count Two.

### E. Count Three: Section 2252(a)(4)(B)

Count Three of the Indictment charges Defendant with Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B). In order to convict Defendant on this Count, the Government needed to prove the following elements beyond a reasonable doubt: (1) that Defendant knowingly possessed a matter which contained any visual depiction; (2) the producing of such visual depiction involved the use of a minor engaging in sexually explicit conduct, and the visual depiction is of such sexually explicit conduct; (3) the matter which contained a visual depiction involving the use of a minor engaging in sexually explicit conduct had been transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign

18

commerce, by any means, including by computer; or the matter which contained a visual depiction involving the use of a minor engaging in sexually explicit conduct was produced using materials which had been mailed or so shipped or transported, by any means, including by computer; and (4) Defendant knew that the visual depiction involved the use of a minor engaging in sexually explicit conduct. 18 U.S.C. § 2252(a)(4)(B); *see also United States v. Freeman*, 2015 WL 45521, at *7 (E.D. Va. Jan. 2, 2015) (citing *United States v. Koegel*, 777 F.Supp.2d 1014, 1022 (E.D. Va. 2011)).

In Count Three, the Government charged conduct related to possession of child pornography. The Court finds that the relevant visual depictions for this charge are images and videos of Baby J (the "Count 3 Visual Depictions").

For the first element, the Court finds that, under the standard stated by the Court *supra*, the Government has proven beyond a reasonable doubt that Defendant knowingly possessed a matter which contained a visual depiction. Here, the Court finds that Defendant demonstrated the requisite mens rea of "knowing" through his extensive cataloging and organization of files that contained CSAM. Defendant's repeated interactions with this content, across different software programs demonstrates his awareness of the sexually explicit nature in which they depicted minors. Moreover, the file name associated with one of the images in question for this count explicitly describes the sexually explicit acts endured by a two-year-old "Baby J." Gov. Exh. 38 at 3. Further, the Court finds that the existence of these types of videos and images, with similar file names, across his devices reflects Defendant's undeniable knowledge of the existence of the Count 3 Visual Depictions on his devices.

For the second element, the Court finds that the Government proved beyond a reasonable doubt that the Count 3 Visual Depictions involved the use of a minor engaged in sexually explicit

conduct, and that the Count 3 Visual Depictions are of such sexually explicit conduct. On the relevant device, the Seagate hard drive, there is a file path with many files referring to Baby J. *Id.* at 5. In their case-in-chief, the Government offered evidence of the existence of this minor, Baby J, through testimony from a retired detective who worked on an investigation concerning Baby J. That witness identified the Baby J images and videos on Defendant's devices and confirmed that he recognized Baby J from his in-person interview with her and from other CSAM materials related to her abuse that he had reviewed over the course of his career. *See* Gov. Exhs. 39B, 60. Further, located on Defendant's Seagate hard drive was a document entitled "BabyJ" where Defendant summarizes the story of Baby J and her father, who was ultimately convicted and imprisoned for his abuse. Dkt. 40. The Court finds that there is sufficient basis to find that Baby J is an actual minor based on the testimony of the detective, and this detailed description authored by Defendant corroborates the testimony given by the detective and connects the files referring to "BabyJ" to the document entitled "BabyJ," and the real minor victim identified by the detective as Baby J. Given this nexus, the Court finds that the Count 3 Visual Depictions involved the use of a minor engaged in sexually explicit conduct, and that Count 3 Visual Depictions are of such sexually explicit conduct, and that this element has been satisfied beyond a reasonable doubt.

For the next element, the Government must show that the matter which contained a visual depiction involving the use of a minor engaging in sexually explicit conduct had been transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, by any means, including by computer; or the matter which contained a visual depiction involving the use of a minor engaging in sexually explicit conduct was produced using materials which had been mailed or so shipped or transported, by any means, including by computer. Like the other CSAM files found on Defendant's devices, the Court finds that Defendant downloaded

20

the Count 3 Visual Depictions from the internet on his computer, which is a means or facility of interstate commerce. The Court therefore finds that the Government has proven this element beyond a reasonable doubt.

Finally, the Government must prove that Defendant knew that the visual depiction involved the use of a minor engaging in sexually explicit conduct. Defendant's own efforts to memorialize the sexual acts endured by Baby J provide ample support to demonstrate that Defendant knew that the Count 3 Visual Depictions involved use of a minor engaging in sexually explicit conduct. Dkt. 40. The Court finds that the Government has proven this element beyond a reasonable doubt.

Because the Government has proven all of the elements of the charge, the Court now finds that the Government has established, beyond a reasonable doubt, that Defendant violated 18 U.S.C. § 2252(a)(4)(B). Accordingly, the Court finds Defendant guilty of Count Three.

### F. Multiplicity

Having determined that Defendant is guilty of each of the three counts charged by the Government, the Court must determine whether Counts 1 and 2 suffer from multiplicity and thus run afoul of Double Jeopardy. "Multiplicity is 'the charging of a single offense in several counts.'" *United States v. Lawing*, 703 F.3d 229, 236 n.7 (4th Cir. 2012). The Fourth Circuit defines a multiplicitous indictment as one in which multiple charges "are in law and in fact the same offense." *United States v. Crew*, 538 F.2d 575, 577 (4th Cir. 1976). This Court has previously recognized that, where the Government states that the images in the various counts are different from one another in the Indictment, the Indictment is not multiplicitous. *See United States v. Traub*, 2025 WL 3269946, at *4 (E.D. Va. Nov. 21, 2025) (relying on indictment's statement that the images in count 1 are distinct from count 2). Here, there is similar language in the Indictment distinguishing the images charged in Counts 1 and 2 from the images charged in

21

Count 3. *See* Dkt. 1 (charging that at least one image in Count Three "is different from the images in Counts One and Two above and involved a prepubescent minor and a minor who had not attained 12 years of age"). This language, along with the Government's representations and this Court's express findings regarding which visual depictions are associated with Counts 1, 2, and 3, demonstrates that Defendant is being held to account for a set of images in Count 3 that is distinct from the images charged in Counts 1 and 2. *See also United States v. Schnittker*, 807 F.3d 77, 83 (4th Cir. 2015) (recognizing that, "if a possession conviction was based on an image the receipt of which did not form the basis of the receipt conviction," the count are not multiplicitous).

With respect to Counts 1 and 2, there is no such similar language in the Indictment, but in the presentation of its case, the Government made clear that the images associated with Count 1 were associated with the desktop and hard drive (Govt. Exhs. 17, 18) and the images associated with Count 2 were associated with the laptop (Govt. Exhs. 27, 27A, 29). Courts have recognized that, where a defendant receives or possesses CSAM on different devices, different crimes may be charged. *See United States v. Planck*, 493 F.3d 501 (5th Cir. 2007) (affirming that counts were not multiplicitous where defendant possessed child pornography on three different devices); *United States v. Hinkeldey*, 626 F.3d 1010 (8th Cir. 2010) (affirming convictions for images on computer, zip drive, and four computer disks); *United States v. Fassero*, 2025 WL 259197, at *2 (C.D. Ill. Jan. 21, 2025) (finding counts not multiplicitous). Here, as the Court's findings reflect, Counts 1 and 2 address different images on different devices. Accordingly, the Court rejects Defendant's multiplicity argument as it pertains to all counts.

Defendant relies on the First Circuit's decision in *United States v. Ortiz-Colon*, 178 F.4th 1 (1st Cir. 2026), but that decision does not mandate a different result here. In *Ortiz-Colon*, the First Circuit emphasized that the Government did not specify in opening or closing arguments that

22

certain images formed the basis of the possession count and that other images were to be considered the basis for the receipt count. *Id.* at 47. The First Circuit further noted that nothing in the instructions nor the verdict "made any distinction as to what evidence should have been considered for Ortiz's *receipt* and *possession* charges." *Id.* (emphasis in original). Here, the Government has done more. During the taking of evidence, the Government linked certain images to certain devices. Moreover, both orally in response to the Rule 29 motion and in written summation, the Government tied the images introduced as evidence to certain devices and then distinguished between the devices and images as to certain counts. As discussed *supra*, the desktop and hard drive form the basis for Count One, the laptop forms the basis for Count Two, and the BabyJ video forms the basis for Count Three. Moreover, a critical distinction between the instant case and *Ortiz-Colon* is that, unlike in *Ortiz-Colon*, the factfinder here is this District Judge and there is no speculation as to what CSAM the factfinder is relying on to find guilt on the separate counts of the Indictment. Having reviewed the entire record and the specific findings that the Court has made, there is no multiplicity issue, and a verdict of guilty as to each count is appropriate. *See United States v. Glass*, 160 F. 4th 563 (4th Cir. 2025) (noting a court should "consult the entire record of the proceedings—not the indictment language only" (cleaned up)).

## V.    VERDICT

In accordance with these findings of fact and conclusions of law, the Court FINDS, beyond a reasonable doubt, Defendant Nathaniel Carey Lee GUILTY of Counts One, Two, and Three as charged in the Indictment and DENIES Defendant's renewed oral Rule 29 Motion.

Alexandria, Virginia
July **20** , 2026

_____ /s/
Rossie D. Alston, Jr.
United States District Judge

23